The next case for argument is Federal Insurance Company v. Metropolitan v. MTA. Good morning, Your Honors. My name is Jonathan Bondi. I represent Federal Insurance Company. I think the central issue that I'm going to focus on this morning is the lower court's expansion of incorporation by reference in finding that Section 803 of the underlying landmark MTA contract binds the surety through its performance bond. And I think that it comes down to the court setting the right standard but not applying it properly. And I think the court below sort of implicitly acknowledged that it didn't really fit, but it's close enough. And with all due respect to the court below, it's not close enough. And I would direct the court to Special Appendix, page 12, where the court quoted, an arbitration agreement restricted to the immediate parties does not bind the non-party, but notwithstanding words of incorporation or reference in a separate contract by which the non-party is bound. There's no question that the bond incorporates the underlying contract by reference. You have to go look at the language then in the underlying contract where it talks about the contractor and the MTA. The contractor and the MTA. The contractor and the MTA. And it's interesting not to hoist someone by their own petard, but the appellee's opposition brief talks about the contract being, quote, rife with references to the surety, except in this section. There's nothing here. All it talks about is what can happen between the contractor and the MTA. If they want to go back and rewrite their contract and say it impacts anybody who has any claims or issues of any type or kind relating to this contract, fine, that would do it. If they want to add to it. In the briefing, the reference to contractor, you say it refers only to landmark, but the contract defines contractor to include successor. So one of their arguments is that your client was a successor. How is a bonding company a successor to a contractor legally as a matter of corporate law? I'm not talking about successor in the sense of a bonding company comes in and undertakes completion of a project. It basically steps into the defaulted contractor's shoes for performance of the work. It doesn't make them the legal successor to the contractor. It makes the performing surety the performing surety. And courts have frequently recognized that, for example, a performing surety has subrogation rights on behalf of the owner for whom it is rendering performance. The defaulted contractor doesn't have that. And, Your Honor, in anticipation sort of of that question, if you look at the bond itself, it talks about in various instances it says and sometimes successor, and in other times it doesn't say successor. You know, and that's page 844 of the record. If you look, it says, now, therefore, the conditions of this obligation are such that if the contractor, its representatives or assigns, word successor is missing, shall well and faithfully perform the said contract and all modifications, blah, blah, blah. All right? This is an MTA form. They do not include the word successor here. If you go lower down, they do talk about successors, and actually at the very beginning it says this bond is binding on the signatories, their executors, administrators, successors, and assigns. Well, you don't need to have the surety's successors be defined if the surety is the successor to the contractor. And we mentioned in our reply papers why a successor is a matter of corporate law. It's not a matter of surety law per se. And the nursing home case that was cited by the appellee is different because there the surety was the completing surety. And what they had there is a contingent subrogation right on behalf of everybody because they were the performing surety. Here, federal didn't perform. It's not subrogated to the MTA's rights at this point because it hasn't performed. It's not subrogated to landmark's rights because it hasn't performed. Had it done either of those, you know, we can have a nice treatise on the laws of equitable subrogation and how they fit into a surety's rights and remedies, but that's not the issue here. The issue is that the surety did not consent to arbitrate. Mr. Bundy, can I focus your attention on 803B and the language that says the parties to this contract? So that's different than contractor, right? And why is it that the district court is not correct in saying this language is broad enough and the district court does seem to say not perfect but close enough, I grant you that, but why is it that the language the parties to this contract, given that the bond incorporates by reference the contract, why isn't that language broad enough? And I suspect you're going to say something about the word dispute. No. Okay, then I'll let you answer. No, I'm going to talk about the difference between contract capital C and contract small c. Okay. All right, contract capital C is the landmark MTA agreement. That itself is incorporated by reference into another contract, small c, which is the bond, capital B. So it's the incorporation by reference. If they had made a more expansive definition in the landmark MTA contract, then I think the MTA would be in a much stronger position. You're saying that the bond did not incorporate the landmark contract? No, it incorporates the landmark contract, but it doesn't make the surety a party to that contract, Your Honor. It is a party to the surety bond contract. And why is it that it doesn't make it a party to the contract? No, if we had performed, we step into the contractor's shoes, then you have a different issue. For example, and that's when they cite to the Parsons and Whitmore case, if the surety steps in and completes, then the surety would be stuck as the completing surety under the contract to 803. I have about two minutes left. I'm going to try to save some more time for rebuttal. I think it was a decision that came down after all our papers were in, but the Supreme Court's decision in LAMPS Plus, I think, supports our view, because fundamentally they talk about arbitration being a matter of consent. And this is a contract that talks about disputes between specifically identified parties. We're not disputing that 803 is an arbitration provision between landmark and the MTA. We are not disputing that that decision by the chief engineer rises and falls on its own. All right? We're not here to contest whether landmark is or is not in default. The findings below have been made. That's fine. We just want our opportunity to have our case heard in the district court that we have been asked to perform an illegal contract and that the decisions and the whole proceeding below have nothing to do with that. This is a claim made by the MTA under the bond. The bond incorporates a contract that contains an ADR provision that specifically identifies who the ADR participants are, and we're not one of them. We didn't consent to it. We didn't participate in it. We consistently said we're having nothing to do with it. And I think that for that reason, the court below should be reversed, and the court should examine, if this court chooses not to, whether or not we've adequately stated a claim, which was something the court said it didn't need to get to because it was dismissing on the arbitration issue. Unless you have any other questions. We agree with you. We remand back to the district court. You can do either. You do have, you know, the authority to rule on the issue, or you can take a more narrow approach and just send it back. That's, you know, entirely up to you. One's a more narrow endeavor, and one is not. Thank you. You've reserved two minutes, Mr. Bondi. Thank you. Mr. Lipton. Thank you, Your Honors. Ira Lipton, representing the MTA. Just to follow up, Judge Kelly, on your pointing out to a provision in 803B, which would, based upon not only the language of 803B, but also some of the case law, clearly draw the surety into the ADR provision. And that is 803B, and it opens with parties to this contract, parties with a small case P. In that sense, federal is a party to this contract. Why? Well, start out with the definitional sections, and in the definitions of the contract documents, one of the contract documents is the bond. So it's a contract document. The surety is referenced throughout the contract. The contract requires the contractor to procure a bond in accordance with the form of the MTA. And Chapter 7, Governing Default, also references the surety explicitly when it imposes the fundamental obligation on the surety to complete the work upon the default of the contractor. It's the whole idea. So when the bond incorporates the entirety of the contract, without exception, it makes reference to all of the terms and conditions and covenants thereof. How is it that the surety is not bound into the ADR clause? Under the terms of the contract, it is. The surety signed the bond. The bond incorporates the contract, and the contract says that the bond is a contract document. The progressive casualty case that this Court decided some time ago, and it is still quite good law, notes that where the contract documents and where the arbitration clause refers to contracting parties, that can be read broadly enough to cover a non-signatory to the agreement. And that is applicable here under that authority, the kind of language that the MTA is using in its contract reaches the surety. But I want to just step aside on the signatory. Of course, this case is really easier because they really are a signatory, and they signed the bond. And again, the bond incorporates the contract, and the contract references the surety. So we don't see how they're not really even a signatory. But even if they're not, under progressive casualty, they are tied in based upon the 803 language referencing parties to this contract. I don't believe that Federal has fully dealt with the FAA here. You'll note in their opening brief, they cite a New York rule, and it is still a New York rule, governing whether or not a party has agreed to arbitrate. And that old New York rule says that there has to be a clear and unequivocal expression of that in the body of the contract or the arbitral provision. This court said that that rule is preempted by the FAA. It's preempted because that rule hearkens to the days of some judicial hostility towards the arbitral form. Well, the FAA goes the opposite way, not just in the progressive case, but we also cite the David L. Threlkeld case. Which did the same thing, not with a New York provision, but with a Vermont statute that imposed special requirements more than the ordinary contract requirements for the enforcement of an arbitration clause. So those cases also dictate that here a surety can be brought into the ADR clause, even though they didn't actually sign the agreement, which I again think that they did. Now wholly apart from the FAA, Judge Keenan should be upheld anyway just based upon that part of New York law which is consistent with the FAA. And that's the Parsons and Whittemore case. Federal plucked from that a principle that they liked, which I'll also address separately. That principle being, well, if the dispute arises under the bond, then we don't have to arbitrate it. Well, I'll have something to say about that also and whether that really works under the FAA. But just for the sake of argument, supposing it does, what federal ignores is the rest of the decision from the Court of Appeals. And they said, well, whether or not you can participate in the arbitration or not, you are still bound by the arbitral determination covering your principle. So in this case, there is an ADR proceeding between federal's principle landmark and the MTA. According to Parsons and Whittemore, the results of that are binding on the surety. So if the results of that are a sustaining of the default, then the default is final and it's binding on them. And then under the contract and the bond which a federal has signed on to, they have to come in as the completion contractor under Parsons and Whittemore. So Parsons and Whittemore, which they cite, it doesn't really help them. They think it does. I'm in support of your argument that even if they would prevail on many of their points, that this action would be premature as long as that arbitration is ongoing. We do argue that their action is premature. And we also argued below, and it is briefed out, that it's why we thought a declaratory judgment wasn't appropriate here. Based upon the record that this Court has, we don't know how that has panned out. And I shouldn't be saying things that aren't in the record, but I don't think that it's been finally resolved through the judicial review process, which the Article 803 resolves. It has not been finally resolved. The ultimate adjudication of whether or not Landmark defaulted is in the process. It certainly was in the process when this record was finalized. Exactly where it stands today, I'm not 100% sure, but I do believe that it hasn't been finalized. So there is an aspect of the matter not even being right here. Landmark places a great stock in this idea that the contract is illegal. They say, well, this is at the core of their claim, and why they think it is a bond issue and not a contract issue. Because they seem to concede, well, if it's a contract issue between Landmark and the MTA, they seem to be acknowledging that they would be bound by it. But they say, oh, but this arises under our bond. And they kind of cite the bond as if it's some kind of a talisman. All they have to do is mention bond, and somehow or another, the whole ADR process falls to pieces, and they can go off and engage inside plenary litigation. Well, what do they mean that this arises under the bond? They never really explain what the meaning of that is. Two things. Even if it does arise under the bond, whatever that means, that doesn't mean that they don't have to submit it through the ADR process, because the contract that they signed on to governs disputes for any issue that arises under or is related to the contract. It's a very broad clause. But more than that, the issue that they raise, that the contract is illegal, well, you know, the Supreme Court in Buckeye dealt with that, hearkening back to the Primate Paint case. You can't get out of an arbitration clause just because you say that the contract was illegal. In the Buckeye case, it involved plaintiffs there who complained that the lending contract that they entered into was criminally usurious. And the Supreme Court said, well, maybe, maybe not. But there's an arbitration clause in there, and you have to adhere to that arbitration clause. So it's almost as if it's like a non sequitur. They're saying that there are code violations. I just want to finally add, and I don't really think the court needs to address this, but they're working on a 25-year-old building, and they find a code violation. And they think, oh, well, we don't have to satisfy our bond obligations. Whether or not there was a code violation, which it's in the record, you'll see that the MTA disputes quite vigorously, and whether or not that has any impact on the contract dispute, which is contested quite vigorously, but that's a matter for the chief engineer through the arbitral process. Why does that mean that this goes to Judge Keenan for a trial on whether or not the fact that the masonry was lacking some kind of a horizontal reinforcement in the stack bond or that anchors were spaced too far apart, this is supposed to go for a plenary trial? These are contract issues, classically so, and the Federal is bound to the ADR provision. Thank you, Your Honors. Excuse me. Thank you, Mr. Lipton. Mr. Bondi, you've reserved two minutes for rebuttal. Yes, Your Honor. Thank you. Well, I think the progressive case really says exactly what makes this case swing in my client's direction, because you have an MTA bond form, an MTA contract form, they identify everyone they want, and they leave the surety out with no reference whatsoever in any of the ADR language, and there's nothing in the bond that talks about ADR. And while there has been a shift in some courts to have incorporation by reference expand in certain respects, arbitration comes back to did you consent to arbitrate, and here Federal did not. And just addressing some of the points that Mr. Lipton raised. Walk me through again, because I want to understand your argument, why the incorporation by reference, which obviously the surety was well aware of, doesn't incorporate the arbitration provision. Because the arbitration provision as drafted is limited to the contracting parties. The surety is not a contracting party under the direct contract. Correct. I mean, the surety's obligation is entirely contingent when the contract is originally entered into. The surety only gets a call if somebody knocks on their door because there's an issue in performance. I'm going to have to ask you to explain that part to me again, because previously when I pointed out the language, the parties to this contract, you said, well, that's a different contract. That means the capital C contract of landmark, right? That's correct. But I'm looking at the performance bond here, and it says, whereas the contractor seeking to enter or has entered into a contract known as contract capital C, a copy of which contract capital C is annexed to and hereby made part of this bond, as through in here set forth in full. Yes. So I guess I just don't get it. Maybe I'm missing something here. Why isn't that sufficient so that the language of 803B, not A, is incorporating the surety? Because 803 defines whose disputes you're talking about, and the MTA can go back and redraft their contract, which they probably will. When you say they define that, you mean by looking at the word dispute? No, by looking at the word contractor, a contractor in the agency. It says that in 803A, right? In 803B, it says the parties to this contract. You have to look at the rest of 803B, Your Honor, where it talks about 803B1 under the contract capital C, and in 803B2, with respect to any dispute, chief engineer. Wouldn't that go to whether something was covered, right, whether the subject matter was arbitrable, and then that's a question that perhaps goes to the arbitrator? I mean, we're just talking about the first question, about whether they have consented to the arbitration agreement. It would seem to me that your argument about B1 and 2 go to the subject matter of the arbitration, which is the second question, or am I misunderstanding that? No, I think it goes to whether or not the bond is subject to arbitration at all. If it's not subject to arbitration at all, then nothing goes to the arbitrator to determine the issue of arbitrability, because you have a non-arbitrable dispute in the first instance. Well, but the first question is whether the parties have consented to arbitrate, right? When you say the parties, I think Landmark and Transit have. I don't think they're sure yet. I understand that's where you disagree. I'm just trying to identify the first question. Well, I think that the answer is no. I don't think that the — because otherwise you wind up in a never-ending circle, Your Honor. What incorporates what and when? If you have a bond that by its literal terms incorporates the contract, but the bond itself is silent as to any ADR provision, and the — Why does it need an ADR provision if it incorporated the contract that had the ADR provision? Because the ADR provision has nothing to do with any claims relating to the bond. I mean, in response to His Honor's question, we are stuck by the finding that has been issued in the ADR proceeding between Landmark and Transit. The Article 78 hasn't happened yet, but the finding from the chief engineer has happened. It had not as of the time that this motion was submitted and decided. Okay. You know, and so we — for example, the default was upheld, and the surety doesn't contest that. And I don't think it can. I think under Parsons and Whitmore it can't contest it. There has been a fully litigated — I mean, some court in state court may look at the Article 78 and find that it was arbitrary and capricious, but that proceeding hasn't even been commenced yet. But the issue as things stand today is that the default was upheld by the chief engineer. That was the only proceeding that Landmark started was to contest the default. Your argument, just making sure I have some sense of it, is that it's not enough to simply incorporate the contract with its ADR provision in order to make the ADR provision binding on your client. If they wanted to do that, then they needed to be more specific than contracting parties in the ADR provision. It would need to specifically reference the — More or less. They could actually do it both ways. Here the problem is that they specifically identified who the ADR parties are. And by doing that, they boxed themselves in. I'm sure they're smart people there. They will figure out how to break the box open for the next round of contracts. But the way this one is drafted, the only people who are bound by this are Transit and Landmark. Nobody else. Thank you, unless you have any further questions. Thank you both. Landmark will reserve decision in this matter. SEC versus Demason. Thank you. Thank you.